**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MEL M. MARIN,

        Plaintiff,

v.

KURT LANDGRAF, et al.,

        Defendants.

Civil Action No. 11-690 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

Before the Court are the motions of individual Defendants Kurt Landgraf, David Hunt, Mari Pearlman, Glenn Schroeder, Frank Gatti and the Board of Trustees of Educational Testing Service (collectively, "ETS"),[1] the Central Application Service for Physicians' Assistants ("CASPA"), the Board of Directors of the Physician Assistant's Education Association ("PAEA"), and Defendant Ann Donnelly ("Donnelly") (collectively, the "CASPA Defendants"), and Defendants New York Institute of Technology ("NYIT") and Dr. Edward Guiliano (improperly pled as Edward Guillano) ("Guiliano") (collectively, the "NYIT Defendants").

To date, all of the Defendants, with the exception of David Smith and the State University of New York Upstate Medical University ("SUNY"), have filed motions to dismiss. The Court finds that a number of the issues presented by Defendants overlap. As such, the Court will address all of the motions within this Opinion. The Court carefully considered the Parties'

---

[1] The Complaint names the Board of Trustees of Educational Testing Service as one of the Defendants, but throughout the Complaint Plaintiff uses ETS interchangeably with the Board of Trustees of ETS.

submissions and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78. For good cause shown, the Motions to Dismiss are granted.[2]

I. **PROCEDURAL HISTORY**

*Pro Se* Plaintiff Mel Marin ("Plaintiff") filed a Complaint against numerous defendants on February 8, 2011. (Compl., ECF No. 1.) The Court allowed Plaintiff to file an Amended Complaint on April 12, 2011. (Am. Compl., ECF No. 8.) On February 21, 2012, ETS filed a Motion to Dismiss. (ETS's Mot., ECF No. 25.) Plaintiff filed Opposition to the Motion on April 12, 2012. (Pl.'s Opp'n to ETS's Mot., ECF No. 46.) On March 14, 2012, CASPA Defendants filed a Motion to Dismiss. (CASPA Defs.' Mot., ECF No. 31.) Plaintiff served Opposition to the Motion on Defendants.[3] (Pl.'s Opp'n to CASPA Defs.' Mot., ECF No. 75.) On April 9, 2012, Donnelly filed a Motion to Dismiss. (Donnelly Mot., ECF No. 42.) Plaintiff filed an untimely Opposition to the Motion on June 22, 2012. (Pl.'s Opp'n to Donnelly Mot., ECF No. 69-1.) Donnelly also adopts and joins in CASPA's Motion to Dismiss. (Donnelly's Mot. 3.) On March 30, 2012, the NYIT Defendants filed a Motion to Dismiss. (NYIT Defs.' Mot., ECF No.

---

[2] Defendant David Smith ("Defendant Smith") is the President of SUNY Upstate Medical University. A Summons for Defendant Smith was served on February 24, 2012, and filed on February 29, 2012. (ECF No. 27.) No answer was filed. SUNY Upstate Medical University ("SUNY") never responded to the Complaint. The claims lodged against Defendant Smith and SUNY, many of which sound in theories of "conspiracy," are identical to those claims properly before the Court by way of the Defendants' Motions to Dismiss, *i.e.*, Plaintiff appears to allege similarly frivolous claims of (1) interference with prospective business activities, (2) violation of New York state law regarding the privacy of Plaintiff's Social Security Numbers, (3) § 1983 claims and (4) anti-trust violations against Defendants Smith and SUNY. The Court will dismiss Smith and SUNY for the reasons explained in the Opinion. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where nonmoving defendants are in position similar to that of moving defendants or where claims against all defendants are integrally related." ). Therefore, Defendants Smith and SUNY are also dismissed.

[3] Plaintiff's Opposition to CASPA was not filed on ECF. After receipt of CASPA's reply papers, the Court ensured that the opposition papers were added to the docket. The opposition papers are now listed as ECF No. 75.

41.) Plaintiff filed Opposition to the Motion on May 29, 2012. (Pl.'s Opp'n to NYIT Defs.' Mot., ECF No. 57.) The Court shall address each Defendant in turn.

## II. BACKGROUND

### A. ETS

Plaintiff alleges that ETS "is a non-profit organ [sic]" that administers "the Graduate Record Examinations" ("GRE") General Test and Subject Tests. (Am. Compl. ¶¶ 2, 3.) The GRE is a set of "standardized examinations used in the admissions process by various postgraduate institutions." (ETS's Br., ECF No. 25-2.) Plaintiff alleges that ETS requires all GRE applicants to provide their social security numbers to ETS over the internet or by mail. (Am. Compl. ¶¶ 12-13.) Plaintiff further contends that his social security number has been "sealed by two federal courts . . . and can only be used in very limited circumstances." (Id. ¶ 14.) Plaintiff contends that in July 2010 and again in January 2012, he sent letters to ETS requesting permission to take the GRE without providing his social security number but his requests were ignored. (Id. ¶¶ 15-16.) Plaintiff alleges that the lack of response from ETS constituted refusal to allow access to the exam without disclosure of his social security number. (Id. ¶¶ 16, 18.) Ultimately, Plaintiff alleges that such refusal prevented him "from applying for and enrolling in graduate schools to which he intended to apply," namely, NYIT and SUNY. (Id. ¶ 18.) Plaintiff alleges that ETS "stopped . . . [him] from engaging [in] the business he seeks to enter with the salary and benefits he is entitled to [as a] . . . graduate of these . . . schools." (Id.)

Plaintiff also contends that ETS is allegedly "an agent or co-conspirator" of NYIT and SUNY because these institutions "intended for . . . ETS to administer[,] grade and report" the GRE results, used the GRE as the only admissions test, and "ETS agreed to do this as the sole agent of [these institutions]." (Id. ¶¶ 6-7.) Plaintiff also claims that ETS "aggressively

campaigns to maintain its dominant position and to 'shut out' competitors of every kind with practices like predatory pricing, national price-fixing, and exclusive agency agreements[;] . . . [practices] which violate federal antitrust monopoly laws." (*Id.* ¶ 10.)

Plaintiff claims entitlement to "$100,000 per lost year for interfering with his college admissions" and is further seeking an injunction barring ETS's monopolizing practices. (*Id.* ¶ 19.) Plaintiff also seeks "nominal or general" damages for his emotional distress and the time spent in this litigation, and $1,000,000 in punitive damages. (*Id.*)

Based on these allegations, the Amended Complaint asserts claims against ETS for: (1) interference with prospective contractual relations; (2) negligent infliction of emotional distress; (3) violations of the Civil Rights Act, 42 U.S.C. § 1983; (4) violations of the Sherman Act, 15 U.S.C. § 1; and (5) violations of the New Jersey Antitrust Act, N.J. Stat. Ann. §§ 56:9-3, 9-4 (West 2012).

### B. CASPA Defendants

Plaintiff alleges that the CASPA Defendants' online graduate school application service is part of a conspiracy with the schools participating in the services offered by ETS and other named defendants. (Am. Compl. ¶ 108.) Plaintiff alleges that, through their partnership with ETS, the CASPA Defendants are engaging in monopolistic conduct characterized "by a 'tying in' scheme which involves contracting with ETS and with 90% of all schools nationwide . . . to require all applicants who wish to attend those schools . . . to do so only by paying ETS" which he alleges is a violation of the U.S. Constitution and the Sherman Act. (*Id.* ¶ 108.) Plaintiff further claims that the alleged conspiracy prevented or delayed his graduate school application and similarly prevented him from engaging in the "business he seeks to enter . . . ." (*Id.* ¶¶ 17-18.)

Based on these allegations, the Amended Complaint asserts claims against the CASPA Defendants for: (1) interference with prospective business relations; (2) violations of the Civil Rights Act, 42 U.S.C. § 1983; and (3) violations of the New Jersey Antitrust Act, N.J. STAT. ANN. §§ 56:9-3, 4.

### C. NYIT Defendants

Plaintiff claims the NYIT Defendants made an agreement with ETS, as NYIT's agent and co-conspirator, to utilize the GRE as the only standardized test in its admissions process. (Am. Compl. ¶¶ 6, 46, 65-66.) Plaintiff further alleges that Guiliano "help[ed] ETS perpetuate the ETS dominance." (*Id.* ¶ 66.) "Based on these allegations, the Amended Complaint asserts claims against the NYIT Defendants for: (1) violations of the Civil Rights Act, 42 U.S.C. § 1983; (2) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; and (3) violations of Section 2 of the Sherman Act, 15 U.S.C. § 2." (NYIT's Mot. to Dismiss 3.)

### III. LEGAL STANDARD AND ANALYSIS

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court should conduct a three-part analysis when considering a Fed. R. Civ. P. 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded

factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

### A. Plaintiff's Tort Claims are Meritless

#### 1. ETS

Count I of Plaintiff's Amended Complaint asserts two separate causes of action against ETS: (1) interference with prospective business relations; and (2) negligent infliction of emotional distress. (Am. Compl. ¶¶ 24-28, 33-34.)

When facing a substantive question, the Court must conduct a choice of law analysis. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). Under New Jersey's "flexible governmental-interest approach to resolving choice of law questions," the main inquiry is which state has the "greatest interest in resolving the particular issue" presented to the court. *Id.* (citing *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1996)). The governmental interest test has two prongs.

First, the court must determine if there is any conflict between the law of the situs and the law of the venue state. If there is no conflict, then the law of the venue state applies and there is no need to engage in the choice of law analysis. *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) (citing *Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc.*, 280 N.J. Super. 391, 395 (N.J. Super. Ct. App. Div. 1995) (explaining that there is no need for a choice of law analysis when there is no conflict between the situs and the venue)).

If there is a conflict, the second prong of the governmental interest test must be applied. The second prong requires an assessment of "the interests each state has in applying its own law and [a determination of] which state has the most significant relationship to the parties and the event." *Lebegern*, 471 F.3d at 428 (citing *Fu v. Fu*, 160 N.J. 108, 119 (1999)). Five factors are used in the second prong: "(1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the

competing interests of the states." *Id.* (citing *Fu*, 160 N.J. at 122). The fifth factor is paramount. *Id.* at 429 (citing *Erny v. Estate of Merola*, 171 N.J. 86, 101 (2002)). As part of the analysis of the states' competing interests, there is a presumption that the law of the state where the alleged tort occurred, the situs state, should have its law apply. Specific to tort cases, four additional "contacts" should be considered: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.* (*citing Fu*, 160 N.J. at 125).

The Amended Complaint makes it difficult, at best, to determine which state's law governs these claims because Plaintiff does not state his residence[4] or where the alleged torts were committed. Nevertheless, considering that ETS is based in New Jersey, presumably, the conduct that led to the alleged injury occurred, or at least was directed from, New Jersey. (ETS's Br. at 1.) Furthermore, Plaintiff has chosen to bring his lawsuit in New Jersey despite the fact that at least two defendants are from New York. (Am. Compl. 1.) For the above reasons, the Court will apply New Jersey tort law.

      a.    <u>Plaintiff Fails to Establish a Claim for Tortious Interference with a Prospective Business Relationship</u>

Plaintiff alleges that ETS prevented his future business earnings by interfering with the prospective business relationship between Plaintiff and the university of his choice. (Am. Compl. ¶¶ 21-22, 24.) Plaintiff demands damages for the lost value of this relationship consisting of the salary he "would have" earned had he graduated from his university of choice. (Am. Compl. ¶¶ 27-29.) The "logic" underlying Plaintiff's argument requires the following

---

[4] Throughout the pleading, Plaintiff lists his address as a P.O. Box in both California and Pennsylvania. *Compare* Pl.'s Resp. to Def.'s Mot. to Dis., ECF No. 75 *and* Pl.'s Amen. Comp.

assumptions: (1) had ETS permitted him to proceed and take the GRE, (2) Plaintiff would have gained entry into the graduate school of his choice, (3) he would have successfully completed his degree, and (4) he would have secured a position earning over one hundred thousand dollars or more, annually, directly out of school. ETS asserts that Plaintiff's allegations fail to meet New Jersey's "reasonable probability" standard required for interference with a prospective business relationship because the benefits asserted by Plaintiff are too attenuated from ETS's actions. (ETS's Br., 8-9.)

> Under New Jersey law, the five elements of a claim of tortious interference with a prospective business relationship are: (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indust.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown*, 116 N.J. at 563 A.2d at 37; Restatement (Second) of Torts § 766B). In this district, the first element of the tort requires that:

> [t]o sustain a claim of tortious interference, a plaintiff must do more than assert that it lost business. Rather it must allege facts that show an existing or prospective economic or contractual relationship for a mere allegation of lost business does not suffice. Nor does the claimed loss of unknown customers standing alone, state a claim for tortious interference with prospective business relations.

*Advanced Oral Tech., LLC v. Nutrex Research, Inc.*, No. 10-5303, 2011 U.S. Dist. LEXIS 28625, at *9-10 (D.N.J. March 21, 2011) (internal citations omitted). In addition, a "[p]laintiff 'must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers.'" *Id.* at *10 (quoting *Novartis Pharm. Corp. v. Bausch & Laumb, Inc.*,

No. 07-5945, 2008 U.S. Dist. LEXIS 92133 (D.N.J. Nov. 13, 2008)). Pursuant to this standard, Plaintiff's claim of future business earnings lacks the factual underpinnings necessary for this Court to allow it to survive ETS's Motion to Dismiss. Plaintiff advances an argument based entirely on speculation and conjecture. Therefore, Plaintiff's claim for interference with prospective contractual relations is appropriately dismissed.

      b. <u>Plaintiff Fails to Establish a Claim for Negligent Infliction of Emotional Distress</u>

In New Jersey, negligent infliction of emotional distress requires a showing that either (1) the defendant's conduct placed "the plaintiff 'in a reasonable fear of immediate personal injury;'" or (2) the defendant caused the death or serious injury of someone with whom the plaintiff "shared a marital or intimate, familial relationship" and the plaintiff witnessed the incident and suffered emotional distress as a result. *Jablonowska v. Suther*, 195 N.J. 91, 103-04 (2008) (citations omitted).

Plaintiff fails to allege that he was placed in reasonable fear of immediate personal injury or that a close relative died or suffered serious injury as a result of ETS's actions. Plaintiff's failure to assert factual allegations that would make his negligent infliction of emotional distress claim facially plausible warrants dismissal.

    2. CASPA Defendants and Donnelly

Plaintiff alleges that the CASPA Defendants harmed him "by [refusing] to allow [P]laintiff to apply to any of" his preferred schools. (Am. Compl. ¶ 123.) According to Plaintiff, by stalling Plaintiff's admission into university, CASPA Defendants "harm[ed] his business by preventing [Plaintiff] from starting it." (*Id.*) Plaintiff asserts that, at a minimum, he suffered the harm of postponement of education and should receive compensation for the time spent litigating this issue until his acceptance is finalized. (*Id.* ¶¶ 124-25.) CASPA Defendants contend that

Plaintiff fails to "establish a reasonable probability that he would have received the benefits he describes" primarily because Plaintiff has yet to complete the requirements necessary for entry into graduate school which necessarily precludes the career path Plaintiff desires. (CASPA Br. 24, ECF No. 32-1.)

As mentioned previously, courts in New Jersey use New Jersey choice of law rules to determine what substantive standard should be applied to a given claim. *P.V.*, 197 N.J. at 140. Again, Plaintiff's complaint makes it difficult to determine which state's law applies because he provides neither his state of residence nor where the alleged torts occurred. Nevertheless, considering that CASPA is based in Massachusetts, presumably the conduct that led to the alleged injury occurred, or at least was directed from, Massachusetts.[5] The Court will therefore proceed to apply Massachusetts law, which states that:

> a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

*Blackstone v. Cashman*, 448 Mass. 255, 260 (2007). The first element is satisfied when there exists "a probable future business relationship from which there is a reasonable expectancy of financial benefit." *Owen v. Williams*, 322 Mass. 356, 361-62 (1948) (citing Restatement:

---

[5] CASPA, in an abundance of caution, applied New Jersey, Pennsylvania, and New York law in support of its Motion to Dismiss. Regardless of which state's law is applied, the result on the facts here are identical. *Compare Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 563 A.2d 31, 37 (1989) (New Jersey law requires a showing of a "reasonable expectation of economic advantage."), *and Kachmar v. Sungard*, 109 F.3d 173, 184 (3d Cir. 1997) (Pennsylvania law requires that the future contract be objectively reasonable), *and RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 411 (New York tort law requires the presence of an actual contract with a third party).

Torts, § 766). However, "cases applying Massachusetts law have made it clear that where a plaintiff alleges interference only with its *general efforts* to compete . . . in the market at large, it has not satisfied even the first element of a tortious interference claim - the existence of an advantageous business relationship." *Katin v. Nat'l Real Estate Info. Servs.*, No. 07-10882, 2009 U.S. Dist. LEXIS 31398, at *30 (D. Mass. March 31, 2009) (emphasis added); *see also Laser Labs, Inc. v. ETL Testing Lab, Inc.*, 29 F. Supp. 2d 21, 23-24 (D. Mass. 1998) (expressly rejecting the notion that the mere existence of a potential market provided grounds for a tortious interference claim). Here, Plaintiff claims harm to a potential career and education and provides nothing more than speculation about lost opportunity. Such an allegation is insufficient. As such, CASPA Defendants' Motion to Dismiss must be granted.

    **B.** **Plaintiff's Claims Under 42 U.S.C. § 1983 are Meritless Because Plaintiff Has No Constitutionally Protected Interest in Taking the GRE and Applying to Graduate Schools**

Count II of Plaintiff's Amended Complaint alleges various Fourteenth Amendment violations under 42 U.S.C. § 1983. To successfully allege a § 1983 claim a "plaintiff must show that the defendants, act[ed] under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Munoz v. City of Union City*, No. 11-2149, 2012 WL 1655701, at *2 (3d Cir. May 11, 2012) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).

Plaintiff fails to identify a "constitutionally protected interest" at stake and explain whether he seeks to vindicate substantive or procedural due process rights. *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011). The protected interest must fall within a constitutionally protected life, liberty, or property interest. *See id.* at 662; *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007).

Plaintiff alleges his Fourteenth Amendment Due Process rights were violated based upon four theories: (1) violation of his right to have his college applications "processed fairly, and not delayed for an illegal or improper reason;" (2) violation of "his right to apply to the state school without waiving his constitutional right and his right to obey federal orders issued by military command and by the federal appeals courts to this federal court;" (3) violation of his "right to be offered an admission test that is [a] fair measure or predictor of success" in graduate studies; (4) violation of his right "not to be forced to be measured by a test that discriminates on the basis of race and national origin." (Am. Compl. ¶¶ 40-44.)

Plaintiff argues that he possesses a constitutionally protected liberty or property interest in applying to graduate schools or in taking the GRE and that ETS infringed on this right. (*See* Am. Compl. ¶¶ 40-44, 112-118.) However, a constitutionally protected property interest cannot be established by Plaintiff's "abstract . . . desire" or a "unilateral expectation" to apply to graduate school or to take the entrance test. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff failed to establish that he has "a legitimate claim of entitlement" to that interest. *Id.*

Notably, one's desire to pursue graduate or professional education is not a property interest for due process purposes. *See, e.g., Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991) (holding that a medical student accepted to a hospital residency program that was terminated prior to her enrollment did not have protected interest in the pursuit and continuance of the education); *Tobin v. Univ. of Me. Sys.*, 59 F. Supp. 2d 87, 90 (D. Me. 1999) (finding that "applicants for admission to professional or graduate school do not have a property interest in admission is well-established") (citations omitted); *Washington v. Jackson State Univ.*, No. 07-0074, 2008 WL 2779297, at *9 (S.D. Miss. July 14, 2008) ("[P]rospective

students generally possess no liberty or property interest in admission to graduate school.") (citations omitted).

Furthermore, because Plaintiff failed to take the GRE, he therefore lacks standing to challenge discriminatory content or scoring practices. *See Howard v. N.J. Dep't of Civil Serv.*, 667 F.2d 1099, 1101-02 (3d Cir. 1981); *Brookhart v. Ill. State Bd. of Educ.*, 697 F.2d 179, 182 (7th Cir. 1983).

Because Plaintiff failed to allege a constitutionally protected interest sufficient to sustain a claim under § 1983, his § 1983 claims are dismissed as to all Defendants.

### C. Plaintiff Fails to Establish Antitrust Violations under the Sherman Act and New Jersey Antitrust Act

In Count III, IV, and VI of the Amended Complaint, Plaintiff alleges a conspiracy to monopolize and an attempt to conspire to monopolize under Sherman Act §§ 1 and 2 against ETS, NYIT, and CASPA Defendants.[6] In Count V, Plaintiff claims that the ETS and NYIT Defendants violated the New Jersey Antitrust Act, N.J. Stat. Ann. §§ 56:9-3 and 56:9-4. Counts III-VI fail to state a claim against the ETS, NYIT, and CASPA Defendants because Plaintiff is not alleging an antitrust injury, a necessary element for an antitrust claim.

#### 1. Plaintiff's Amended Complaint Does Not Allege Any Antitrust Injury

To adequately plead an antitrust violation a plaintiff must show: "(1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (quoting *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993)). "The goal of the antitrust injury requirement is 'that

---

[6] "ETS and its officers named in this cause of action also combined and conspired intentionally with both the private New York Institute of Technology named herein and with the State University of New York." (Am. Compl. ¶ 92.)

the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 314 (D.N.J. 2011) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). "As a general matter, the class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market, and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010) (citations omitted). Competitors must allege harm to competition, not just harm to the individual competitor. *See Race Tires Am.*, 614 F.3d at 83.

Antitrust standing is also afforded when a party is necessarily harmed by an anticompetitive scheme. *See Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) (antitrust standing available to the patient of a psychologist when a health insurance company conspired to reimburse only patients of psychiatrists). Additionally, courts in this and other circuits have consistently dismissed asserted antitrust claims when plaintiffs masquerade personal injury in the guise of an antitrust allegation even in the presence of a connection to a market effect of higher prices or decreased output. *See, e.g., Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (preventing consumers from receiving "electricity generated by nuclear, coal, culm, solar, or any other energy source" may be potentially undesirable, but was not a concern of the antitrust laws).

Plaintiff claims that the cumulative conduct of ETS, NYIT, and CASPA Defendants denied him the opportunity to take the GRE and apply to graduate schools because ETS allegedly required him to provide his social security number. (Am. Compl. ¶¶ 11-15, 75-76, 95-96, 123.) This alleged harm is not an antitrust injury because it does not arise from interference

with the "economic freedom of participants in the relevant market." *Assoc'd Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983)). Inability to take a standardized exam and apply to a graduate school is not grounded in any economic effect – higher prices or decreased output – that could result from an antitrust violation.

Furthermore, in order to recover damages for an antitrust violation, an antitrust injury must be causally connected to an illegal presence in the market. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Amended Complaint fails to establish plausible facts to indicate that but for the alleged antitrust violation, exclusive dealings, Plaintiff would have been able to take the GRE without providing his social security number.

Plaintiff's Amended Complaint does not show plausible facts sufficient to allege an antitrust injury and, therefore, his Sherman Act claims against the ETS, NYIT, and CASPA Defendants are dismissed.

2. <u>State law Antitrust Claims Must Be Dismissed Because The New Jersey Antitrust Act Must Comport with Federal Antitrust Statutes</u>

The New Jersey Antitrust Act must be "construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes." N.J. Stat. Ann. § 56:9-18. Uniform construction of the federal and state antitrust laws is "mandatory, not . . . permissive." *Sickles v. Cabot Corp.*, 379 N.J. Super. 100, 114 (N.J. Super. Ct. App. Div. 2005), *see Monmouth Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 102 N.J. 485, 494 (1986). Because the Court dismisses Plaintiff's federal antitrust claims, the state law claims premised on the same grounds are dismissed as well. *See Regency Oldsmobile, Inc. v. Gen. Motors. Corp.*, 723 F. Supp. 250, 270 (D.N.J. 1989).

### D. New York's Social Security Number Privacy Law Provides No Basis For Relief

Plaintiff argues that ETS violated *N.Y. Gen. Bus. Law* §§ 399-ddd(2)(b), (c), and (e) by requiring that student applicants, including Plaintiff, use their social security numbers for identification purposes in (print) mail and electronic correspondence. The relevant sections of the state law prohibit any "person, firm, partnership, association or corporation" from (1) "*[p]rint[ing]* an individual's social security account number on any card or tag required for the individual to access products, services or benefits provided by the person, firm, partnership, association or corporation," (2) "[r]equir[ing] an individual to transmit his or her social security account number over the internet, *unless the connection is secure or the social security account number is encrypted*," or (3) "*[p]rint[ing]* an individual's social security account number on any materials that are mailed to the individual." §§ 399-ddd(2)(b), (c), (e). Plaintiff's Amended Complaint fails to state a claim under this statute because 1) he did not allege that ETS printed his social security number on any materials, and 2) though ETS permits applicants to provide their social security numbers online, ETS does not *require* that applicants submit their social security numbers over the internet. (ETS's Br. at 6-7, 29.) Furthermore, Plaintiff's pleadings do not allege that any transmission of his social security number would not be secure or encrypted.

In an apparent attempt to counter ETS's argument, Plaintiff suggests that the Social Security Act, 42 U.S.C. § 405, provides a private cause of action. (Pl.'s Opp'n to ETS's Mot. 14.) ETS argues that Plaintiff may not reference new claims in his opposition papers. In *Bell v. City of Philadelphia*, the Third Circuit held that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." 275 Fed. Appx. 157, 160 (2008) (internal citations omitted). Since *Bell*, this Court has consistently extended this holding to arguments made in opposition to motions to dismiss. *See, e.g., Dicuio v. Brother Int'l*

*Corp.*, 2012 U.S. Dist. LEXIS 112047, at *22 n.5 (D.N.J. 2012). Plaintiff's newly proffered cause of action is therefore dismissed.

## IV. CONCLUSION

For the reasons set forth above, and for other good cause shown, it is hereby ordered that ETS's Motion to Dismiss is granted,[7] CASPA Defendants' Motion to Dismiss is granted, NYIT Defendants' Motion to Dismiss is granted, and Donnelly's Motion to Dismiss is granted. An order will be entered consistent with this Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: January 28, 2013

---

[7] As the ETS Defendants are dismissed from the case, Plaintiff's Motion for Partial Summary Judgment against ETS (ECF No. 36 (Pl.'s Mot. for Partial Summ. J.")) is also administratively dismissed.

18